639 F.2d 1142
 OFFSHORE LOGISTICS SERVICES, INC., and Offshore Logistics,
Inc., Plaintiffs- Appellants-Cross Appellees,
v.
ARKWRIGHT-BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY,
Defendant-Appellee- Cross Appellant.
 No. 79-2143.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 March 16, 1981.
 Clayton G. Ramsey, New Orleans, La., for plaintiffs-appellants-cross appellees.
 Donald L. King, New Orleans, La., for defendant-appellee-cross appellant.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before GOLDBERG, CHARLES CLARK and REAVLEY, Circuit Judges.
 CHARLES CLARK, Circuit Judge:
 
 
 1
 This case (like two others decided today bearing similar style but involving claims arising from a separate accident) is a suit by an insured against its excess insurer for failure to pay a claim under the policy. We affirm the judgment of the district court, 469 F.Supp. 1099, after making a further statutory attorney's fee and penalty award.
 
 
 2
 On April 6, 1973, the M/V STONEWALL JACKSON, owned by Offshore Logistics Services, Inc. (Offshore), struck an offshore drilling platform owned by Chevron Oil Co. Chevron brought suit in the district court against Offshore and the related entity that operated the vessel for property damages in the amount of $125,000 sustained in the accident. Settlement negotiations before trial were unsuccessful. Chevron offered to settle the case for $86,000, but Offshore offered only $75,000. The issue of liability was tried in early February, 1975. In June of 1975, Judge Boyle issued his opinion finding Offshore completely liable and absolving Chevron of any negligence relating to this accident. Before the trial on damages, Chevron and Offshore settled the case for $108,000. Offshore's primary insurer, Reserve Insurance Company, contributed $100,000. It had no further liability. Arkwright-Boston Manufacturers Mutual Insurance Company (Arkwright-Boston), Offshore's excess insurer, refused to fund any portion of the settlement. Offshore paid the additional $8,000 itself and brought suit against Arkwright-Boston claiming this amount, $7,500 in attorney's fees and costs under the insurance contract, and additional attorney's fees and a penalty under La.Rev.Stat.Ann. tit. 22 § 658 (West 1978).[1] This action was tried before Judge Collins, who held Arkwright-Boston liable for the $8,000 and for the penalty and attorney's fees under the Louisiana statute but refused to award attorney's fees and costs for the defense of the main suit under the insurance contract because Offshore failed to prove the quantum of these attorney's fees and costs. Both parties timely noticed appeals from this judgment.[2]
 
 
 3
 Offshore appeals only the refusal of the district court to award attorney's fees and costs under the insurance contract for defending against Chevron's claim. The district court found that Offshore did incur expenses defending the original suit and that such fees and costs were covered by the insurance policy issued by Arkwright-Boston. The district court's reason for refusing to award the attorney's fees was that the amount of those fees had not been sufficiently proved. As the district judge noted, the only witness to testify to the amount of attorney's fees paid by Offshore was Offshore's insurance agent, who claimed that the bill for attorney's fees was "made known to (him)." However, this witness did not personally receive a bill for attorney's fees, and neither he nor his insurance firm paid any such bills. His recollection of the amount of attorney's fees was approximate. As the district judge noted, Offshore could easily have proved the amount of these fees by various means. The district court's ruling that Offshore had failed to prove the amount of attorney's fees owed under the insurance policy is clearly correct, and Offshore's argument to the contrary is frivolous.
 
 
 4
 Offshore further argues that the district judge, being an expert in the matter of attorney's fees, should have awarded attorney's fees based on his own assessment of the work done. This argument is without merit. The attorney's fees were claimed for the defense of the main suit, which took place before Judge Boyle, not before Judge Collins, so Judge Collins had no personal knowledge of the amount or quality of the work done. Further, it does not appear that Offshore asked the district court to use its own expertise in assessing attorney's fees. Its failure to do so on its own motion is not error.
 
 
 5
 Finally, Offshore asks us to assess costs and attorney's fees for the instant appeal against Arkwright-Boston under section 658, and to increase the penalty under that statute with reference to the award we make, if any, for costs and fees on appeal. As this claim depends on the validity of any award of attorney's fees and penalty under this Louisiana statute, we shall deal with this claim after discussing the errors asserted by Arkwright-Boston.
 
 
 6
 Arkwright-Boston claims that the district court erred in holding it liable for the $8,000 paid by Offshore to Chevron in settlement of Chevron's property damage suit. Arkwright alleges that Offshore's failure to settle this claim within the limits of the primary policy was unreasonable. All parties agree that if Offshore failed to act in good faith in settling the claim by Chevron, Offshore will be liable for the excess judgment. This principle derives from several decisions of this court and of the Louisiana courts.[3] Arkwright-Boston asserts that after Judge Boyle's determination that Offshore was liable to Chevron for the accident, Chevron communicated to Offshore an offer to settle the claim for $100,000. It points to testimony by Chevron's counsel, Harris, to this effect. Offshore denies that any post-trial offer of less than $108,000 was made. When Arkwright-Boston's own counsel took the stand at the trial before Judge Collins, he testified that Chevron's attorney, Harris, submitted a firm offer of settlement for $111,000 toward the end of May, 1975. It is undisputed that Offshore and Chevron settled in August, 1975, for $108,000. Though Judge Collins did not enumerate a finding of fact on this point, his opinion resolves this conflict in the evidence in this manner: "However, once Chevron had won on the liability issue, Mr. Harris refused to settle for less than $108,000." Given the clear conflict in proof as to what offer Chevron made, this factual resolution is not clearly erroneous. The district court's determination that Offshore had acted in good faith before the trial of liability in attempting to settle this claim is affirmed on the same basis. Arkwright-Boston asserts no other general defense to recovery under its policy.
 
 
 7
 Arkwright-Boston argues that the judgment against it should be reduced by the $5,000 deductible required by the primary policy. The district court rejected this argument since no proof was made that the deductible amount had not been paid to the primary carrier. This is correct. Moreover, Arkwright-Boston got the full benefit of $100,000 in underlying coverage as its policy specified. For both reasons the ruling of the district court is affirmed.
 
 
 8
 Arkwright-Boston asserts that the district court's assessment of a penalty and fees against it under La.Rev.Stat.Ann. tit. 22, § 658 (West 1978) was incorrect because it had several legal defenses it considered meritorious. The district court relied in part on Gulf Oil Corp. v. Mobil Drilling Barge or Vessel, 441 F.Supp. 1 (E.D.La.1975), aff'd, 565 F.2d 958 (5th Cir. 1978). That case held that an insurer's failure to pay a claim based solely on its own incorrect interpretation of the policy is deemed arbitrary and warrants a statutory penalty and attorney's fees under Louisiana law.
 
 
 9
 At the time he made his decision, the district judge did not have the benefit of Rudloff v. Louisiana Health Services & Indemnity Corp., 385 So.2d 767 (La.1980) (on rehearing). There, the Supreme Court of Louisiana faced a question of an award of a statutory penalty and fees under La.Rev.Stat.Ann. tit. 22, § 657 (West 1978). The plaintiff in that case had incurred medical expenses for treatment of a mental disorder. Her insurance policy excluded coverage for mental disorders. However, a new Louisiana statute required that insurance companies offer such coverage under the relevant circumstances. In order to remedy the insurer's violation of the statute, the court read into the policy coverage of mental disorders. The court refused to award the statutory penalty and attorney's fees because the insurer was justified in relying on its policy exclusion since the new statute had not been interpreted at the time the plaintiff made her claim. We cannot predict the extent of the impact of Rudloff on the previously existing rule that an erroneous, though reasonable interpretation of the policy by an insurer subjects the insurer to the statutory penalty and attorney's fees. See, e. g., Reichert v. Continental Insurance Co., 290 So.2d 730, 735 (La.App.1974). That rule was in doubt even before Rudloff. See Cotlar v. Gulf Insurance Co., 318 So.2d 923, 927 (La.App.1975), but cf. Carney v. American Fire & Indemnity Co., 371 So.2d 815, 819 (La.1979). While Rudloff involved only section 657, the court's reliance on Cotlar, a case involving section 658, indicates that Louisiana would apply the same rule to that section also.
 
 
 10
 Although Louisiana law may now differ from that relied on by the district court, the judgment appealed from is due to be affirmed. Apart from its reliance on Gulf Oil Corp., the district court held that Arkwright-Boston's refusal to honor its policy was unreasonable, arbitrary, and capricious. This determination of whether an insurer's refusal to pay is so lacking in foundation as to bring Louisiana's statutory penalty into play is primarily one of fact. Reliance Insurance Co. v. Orleans Parish School Bd., 322 F.2d 803 (5th Cir. 1963); Cryer v. Gulf Insurance Co., 276 So.2d 889 (La.App.1973). This finding of fact by the district court is not clearly erroneous. Fed.R.Civ.P. 52(a). Furthermore, the district court's invocation of the Gulf Oil Corp. rule to find that the statutory penalty and fees should be applied to the refusal to pay for Offshore's attorney's fees in defending Chevron's claim was not harmful to Arkwright-Boston. Since the latter fees had not been proved, the district court declined to assess a new penalty on that amount.
 
 
 11
 Since we hold that imposition of the statutory penalty and attorney's fees is appropriate, it is also appropriate to award attorney's fees to Offshore for its attorney's work in this appeal. Haynes v. Standard Fire Insurance Co., 370 So.2d 118 (La.App.1979); Witherwax v. Zurich Insurance Co., 315 So.2d 420 (La.App.1975). Considering the size and complexity of the record, the issues raised, the briefs filed and the oral arguments made on this appeal, and the amount of time that would reasonably have to be expended to complete the legal effort involved, we award the sum of $1,000 in attorney's fees under section 658, plus the statutory 12% penalty thereon to counsel for cross-appellees.
 
 
 12
 The judgment of the district court, as modified to add attorney's fees and penalty assessed in this court, is affirmed. Costs are assessed one-third against appellants and two-thirds against cross-appellant.
 
 
 13
 MODIFIED AND AFFIRMED.
 
 
 
 [1]
 Section 658 provides that failure to pay a claim within sixty days of receipt of proof of the claim, "when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount, payable to the insured ... together with all reasonable attorney's fees for the prosecution and collection of such loss ...."
 
 
 [2]
 Offshore's brief in this court correctly states the chronology of events surrounding its notice of appeal:
 On March 9, 1979, ABM (Arkwright-Boston) moved to alter and/or amend the judgment of the trial court. On April 10, 1979, before the court's decision on ABM's motion, plaintiff filed its Notice of Appeal. Thereafter, the trial court, in written Reasons for Judgment and in an Order dated April 24, 1979, denied defendant's motion to alter and/or amend the judgment except for certain technical corrections. This order was entered of record on April 26, 1979 and on May 24, 1979, ABM gave notice of its appeal from the judgment of March 9, 1979 as amended.
 Under Fed.R.App.P. 4(a)(4) (1980), Offshore's notice of appeal, coming before the disposition of Arkwright-Boston's motion under Rule 59 to alter or amend, would "have no effect." At the time this appeal was taken, however, Rule 4(a)(4) did not so provide. Under the old rule, Offshore's notice of appeal was valid. Stokes v. Peyton's Inc., 508 F.2d 1287 (5th Cir. 1975) (holding valid a notice of appeal filed while a motion for new trial was pending).
 
 
 [3]
 See, e. g., Ward v. State Farm Mut. Auto. Ins. Co., 539 F.2d 1044 (5th Cir. 1976); Hernandez v. Employers Mut. Liab. Ins. Co., 346 F.2d 154 (5th Cir. 1965); Cousins v. State Farm Mut. Auto. Ins. Co., 294 So.2d 272, 275 (La.App.1974); Younger v. Lumbermen's Mut. Cas. Co., 174 So.2d 672, 675-76 (La.App.1965)